# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### ASSIGNED ON BRIEFS APRIL 21, 2011

## HAROLD B. SCHAFFER v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Direct Appeal from the Chancery Court for Hickman County**
**No. 10-016C      Jeffrey S. Bivins, Chancellor**

_____

**No. M2010-01742-COA-R3-CV - Filed May 12, 2011**

_____

Appellant was found guilty of a disciplinary offense while in the custody of the Tennessee Department of Correction. The chancery court granted Appellant's petition for writ of certiorari, and, finding no entitlement to relief based upon the administrative record, it dismissed the petition. Appellant appeals, and we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Harold B. Schaffer, Nashville, Tennessee, *pro se*

Robert E. Cooper, Jr., Attorney General and Reporter, Kellena Baker, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Correction, et al

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Harold B. Schaffer ("Appellant") is an inmate in the custody of the Tennessee Department of Correction ("TDOC") housed at the Turney Center Industrial Complex ("TCIX") in Only, Tennessee. Appellant was charged in case #813407 with the prison disciplinary offense of conspiracy to violate state law based on Tennessee Code Annotated section 39-16-507, coercion of a witness. Following a disciplinary hearing on October 21, 2009, the TCIX disciplinary board found Appellant guilty of the offense, and as a result, imposed a $5.00 fine and twenty days punitive segregation. The board also recommended that Appellant be placed in administrative segregation and that he lose ninety days of sentence credits. The warden approved both recommendations.

Appellant then filed a petition for common law writ of certiorari in the Hickman County Chancery Court seeking review of his conviction. TDOC did not oppose Appellant's petition, and the trial court entered an order granting Appellant's petition for writ of certiorari. The trial court found that Appellant was not entitled to relief based upon the administrative record, and it dismissed the petition. Appellant timely appealed.

### II. ISSUES PRESENTED

Appellant presents the following issues for review, summarized as follows:

1.   Whether the trial court correctly concluded that the disciplinary board did not exceed its jurisdiction or act illegally, arbitrarily, or capriciously in convicting Appellant of conspiracy to violate state law;

2.   Whether the minimum requirements of due process of law in disciplinary board hearings were met; and

3.   Whether the board complied with TDOC policy in recommending Appellant's placement in administrative segregation.[1]

For the following reasons, we affirm the decision of the chancery court.

---

[1]Appellant also lists as an issue on appeal that TDOC "failed to certify and file the record." However, Appellant fails to explain the information allegedly excluded, and the record indicates that TDOC filed a certified copy of the administrative record.

### III. STANDARD OF REVIEW

"The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals." *Jackson v. Tenn. Dep't of Corr.*, No. W2005-02240-COA-R3-CV, 2006 WL 1547859, at *3 (Tenn. Ct. App. June 8, 2006) (citing *Rhoden v. State Dep't of Corr.,* 984 S.W.2d 955, 956 (Tenn. Ct. App. 1988)). The issuance of a writ of common-law certiorari is not an adjudication of anything. *Keen v. Tenn. Dep't of Corr.,* No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008) (citing *Gore v. Tenn. Dep't of Corr.,* 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003)). Instead, it is "simply an order to the lower tribunal to file the complete record of its proceedings so the trial court can determine whether the petitioner is entitled to relief." *Id.* (citing *Hawkins v. Tenn. Dep't of Corr.,* 127 S.W.3d 749, 757 (Tenn. Ct. App. 2002); *Hall v. McLesky,* 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001)). "Review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently." *Jackson,* 2006 WL 1547859, at *3 (citing *McCallen v. City of Memphis,* 786 S.W.2d 633, 640 (Tenn. 1990)). "The reviewing court is not empowered 'to inquire into the intrinsic correctness of the board's decision.'" *Gordon v. Tenn. Bd. of Prob. and Parole,* No. M2006-01273-COA-R3-CV, 2007 WL 2200277, at *2 (Tenn. Ct. App. July 30, 2007) (quoting *Willis v. Tenn. Dep't of Corr.,* 113 S.W.3d 706, 712 (Tenn. 2003)). Our Supreme Court has held that a common-law writ of certiorari may be used to remedy: "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." *Gordon,* 2007 WL 2200277, at *2 (citing *Willis,* 113 S.W.3d at 712). The reviewing court does not weigh the evidence, but must uphold the lower tribunal's decision if the lower tribunal "acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently, and if there is any material evidence to support the [tribunal's] findings." *Jackson,* 2006 WL 1547859, at *3 (citing *Watts v. Civil Serv. Bd. of Columbia,* 606 S.W.2d 274, 276-77 (Tenn. 1980); *Davison v. Carr,* 659 S.W.2d 361, 363 (Tenn. 1983)). "A board's determination is arbitrary and void if it is unsupported by any material evidence." *Gordon,* 2007 WL 2200277, at *2 (citing *Watts,* 606 S.W.2d at 277). Whether there existed material evidence to support the board's decision is a question of law which should be determined by the reviewing court based on the evidence submitted. *Id.* (citing *Watts,* 606 S.W.2d at 277).

This Court must review a trial court's conclusions of matters of law *de novo* with no presumption of correctness. *Gordon,* 2007 WL 2200277, at *2 (citing Tenn. R. App. P. 13(d); *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn. 2000)). Because our review of the board's determination "is no broader or more comprehensive than that of the trial court with respect to evidence presented before the [b]oard[,]" *Id.* (citing *Watts,* 606 S.W.2d at 277),

this Court "will not 'inquire into the intrinsic correctness of the [b]oard's decision,' but will uphold the decision if it was reached lawfully and in a constitutional manner." ***Id.*** (quoting *Hopkins v. Tenn. Bd. of Paroles and Prob.,* 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001)).

## IV.  DISCUSSION

### A.  Whether Board Exceeded Jurisdiction or Acted Illegally, Arbitrarily or Capriciously

On appeal, Appellant argues that the disciplinary board exceeded its jurisdiction or acted illegally, arbitrarily or capriciously in convicting him.  First, he claims that criminal, as opposed to disciplinary, charges were brought against him, and that his case should have been referred to the Attorney General.  Next, he claims that the disciplinary report "fail[ed] to appropriately state and identify the offense[] for which the appellant must answer and defend[,]" and that his conviction "was not supported by any evidence[.]"  He further argues that the board improperly relied upon confidential information without a "written statement" from the informant "that states, testifies or provides proof that the appellant committed the act of conspiracy[.]"  Finally, he contends that he was denied a fair and impartial hearing because his former case manager, Sheryl Watson, participated in the disciplinary hearing in violation of TDOC policy, and because board member Kathy Scott was allowed to participate in the hearing despite her involvement in the incident for which Appellant attempted to coerce testimony.

First, we reject Appellant's assertion that he was charged with a criminal offense and that the disciplinary report failed to sufficiently apprise him of the offense charged.  The disciplinary report alleges that Appellant "did intimidate, co[erce] and place [] unwanted influence" on another inmate "into signing a not[a]rized statement that he made false statements during an official administrative hearing[.]"  It clearly states that  Appellant is "charged with CVS-39-16-507[2] coercion of a witness" and it identifies the "Incident Type" as "Conspiracy to Violate State L[aw,]" which is defined in TDOC Policy 502.05(VI)(A)(8):

Conspiracy to Violate State Law (CVS) (Class A or B): Two or more persons,

---

[2]Tennessee Code Annotated section 39-16-507 provides in relevant part:

(a) A person commits an offense who, by means of coercion, influences or attempts to influence a witness or prospective witness in an official proceeding with intent to influence the witness to:

(1) Testify falsely;
(2) Withhold any truthful testimony, truthful information, document or thing[.]

each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating the commission of a state criminal offense, agreeing that one or more of them will engage in conduct which constitutes such offense. If a person guilty of conspiracy knows that another with whom the person conspired to commit a criminal offense has conspired with one or more other persons to commit the same offense, the person is guilty of conspiring with such other person or persons, whether or not their identity is known, to commit such offense. The state law and TCA Code violated shall be cited in the incident report.

Next, we find that the board properly relied upon confidential information. TDOC Policy 502.01(VI)(L)(4)(c)(3) provides that an inmate pleading not guilty has the right to "cross-examine any witness (except a confidential source) who testified against him/her and to review all adverse documentary evidence (except confidential information)." "Whenever confidential information or confidential security sensitive evidence is utilized by the disciplinary hearing officer/chairperson as a basis for its decision, the TDOC Contemporaneous Record of Confidential Informant Reliability, CR-3510, shall be completed to document the factual basis for the disciplinary hearing officer's/chairpersons's finding that the informant and/or security sensitive evidence was reliable." TDOC Policy 502.01(VI)(L)(4)(g). In this case, a CR-3510 form was completed by the board chairperson indicating that a confidential informant had identified Appellant as the person who coerced "him into signing a false and untrue statement, which was submitted to Warden Fortner[.]" It further stated that the investigating officer had offered a sworn statement before the board of the informant's reliability based upon his proven reliability in "specific past instances." We find no TDOC policy provision, and Appellant does not cite any such authority, to support Appellant's assertion that confidential information cannot be relied upon unless a "written statement" from the informant is included in the administrative record. In sum, we find that the board complied with TDOC policy regarding confidential evidence.

We also find that evidence was presented to support Appellant's conviction. As we stated above, "[a] board's determination is arbitrary and void if it is unsupported by *any* material evidence." *Gordon,* 2007 WL 2200277, at *2 (citing *Watts,* 606 S.W.2d at 277) (emphasis added). At the hearing, the disciplinary board considered the testimony of both Appellant and the investigating officer as well as information from a confidential informant. Despite Appellant's assertion that the investigating officer's testimony is inadmissible hearsay, the board was required to consider such testimony if it found it reliable. *See* TDOC Policy 502.01(VI)(L)(4)(c)(2) ("The board/hearing officer shall consider all evidence which it finds to be reliable, whether or not such evidence would be admissible in a court of law."). The board simply credited the testimony of the investigating officer and the confidential

informant over that of Appellant, and we do not have authority to reweigh the evidence. ***See Robinson v. Clement***, 65 S.W.3d 632, 637 (Tenn. Ct. App. 2001) (stating that a common law writ of certiorari cannot be used to attack the intrinsic correctness of the board's decision nor to seek a re-weighing of the evidence).

Finally, we reject Appellant's argument that he was denied a fair hearing based upon the participation of Sheryl Watson and Kathy Scott. TDOC Policy 502.01(VI)(A)(5) provides that no employee shall sit on the disciplinary board of a case if any of the following conditions exist:

a.  He/she is the reporting employee.
b.  He/she participated directly in the investigation.
c.  He/she has personal knowledge concerning the case, except in those instances where knowledge of the incident is so widespread as to be known by most employees (i.e., common knowledge).
d.  He/she has a personal interest in the outcome of the case.
e.  He/she is the inmate's assigned counselor, inmate relations coordinator (IRC), or unit manager.

Appellant concedes that Sheryl Watson was not his case manager at the time of the hearing; however, he claims that Ms. Watson was his case manager during the "time of the investigation" and that she was also the case manager of the inmate whom Appellant allegedly coerced into signing a false statement. Without further explanation, Appellant states that "[d]uring this investigation case manager Watson obtained first hand information on or around September 19th, 2009 from [the investigating officer] concerning the appellant which prejudiced the appellant and denied him a fair hearing." Because TDOC policy does not prevent an inmate's *former* case manager from participating in a disciplinary hearing, and because Appellant has failed to point to evidence supporting his allegation that Ms. Watson obtained certain information which prejudiced him, we find that Ms. Watson's participation did not deny Appellant a fair hearing.

Appellant asserts that Kathy Scott should not have been allowed to participate in the hearing because he claims she was "directly involved" in case #805351–the case for which Appellant attempted to coerce false testimony. Unfortunately, Appellant cites no evidence to support his conclusory assertion of Ms. Scott's involvement in case #805351. Furthermore, assuming, arguendo, that Ms. Scott was involved in case #805351, we find that case #805351 is independent from the case at hand.

### B. Due Process

As a result of Appellant's conviction, the board imposed a $5.00 fine against him as well as twenty days punitive segregation.[3] It further recommended, and the warden approved, that Appellant be placed in administrative segregation and that he lose ninety days of sentence credits. Appellant argues that he was not notified of the recommendations regarding loss of sentence credits and placement in administrative segregation until after the warden had approved such. Thus, he contends, he was not afforded procedural due process.

The Fourteenth Amendment's Due Process Clause protects individuals by guaranteeing fair procedure. *Littles v. Campbell,* 97 S.W.3d 568, 572 (Tenn. Ct. App. 2002) (citing *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). "'In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" *Id.* (quoting *Zinermon,* 494 U.S. at 125). A claim is not actionable unless the State fails to provide due process; thus, we must first determine what process is due, if any, and whether such process has been afforded. *Id.* (citation omitted).

The United States Supreme Court has stated that only those restraints to a prisoner's liberty interest which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" are actionable under the Due Process clause. *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). "Once a court determines that the restraints imposed upon the prisoner's liberty are indeed 'atypical' and a 'significant hardship,' the court must next determine what type of process is constitutionally required." *Littles,* 97 S.W.3d at 572. Pursuant to *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Due Process Clause requires that inmates subject to disciplinary proceedings be afforded: "(1) written notice of any charges made against the prisoner at least twenty-four (24) hours before a hearing is held; (2) the opportunity to present witnesses; (3) an impartial tribunal; and (4) a written statement from the tribunal indicating what evidence the factfinder relied upon and the reasons for the disciplinary actions taken." *Id.* (citing *Nevills v. S. Cent. Corr. Disciplinary Bd.,* No. M2000-02324-COA-R3-CV, 2001 WL 1117066, at *13 (Tenn. Ct. App. Sept.25, 2001)).

---

[3]Brief periods of disciplinary segregation and "de minimus" fines do not invoke due process protections. *See Sandin*, 515 U.S. 472, 483-85; *Irwin v. Tenn. Dep't of Corr.*, 244 S.W.3d 832, 835 n.2 (Tenn. Ct. App. Aug. 13, 2007)

"A prisoner has no constitutional right to remain free of administrative segregation which is discretionary with prison officials because 'the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.'" ***Woodruff v. Tenn. Dep't of Corr.***, No. M2001-00494-COA-R3-CV, 2002 WL 1974138, at *5 (Tenn. Ct. App. Aug. 28, 2002) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)); *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) ("Administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest without regard to duration[.]"; *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) ("After *Sandin*, a prisoner cannot argue that placement in administrative segregation is an 'atypical and significant hardship.'"). However, "the loss of previously earned sentence reduction credits has been found to implicate an interest sufficient to invoke due process." ***Seals v. Bowlen***, No. M1999-00997-COA-R3-CV, 2001 WL 840271, at *6 (Tenn. Ct. App. July 26, 2001) (citing *Greene v. Tenn. Dep't of Corr.,* No. 01A01-9608-CH-00370, 1998 WL 382204, at *3 (Tenn. Ct. App. July 10, 1998) (footnote omitted)). Because his liberty interests have been implicated in this case, with regard to loss of sentence credits, we must determine whether Appellant was afforded the due process requirements set forth in *Wolff*.

In the instant case, Appellant received notice of the charges against him on October 2, 2009, prior to the disciplinary hearing on October 21, 2009. At the hearing before an impartial board, Appellant, himself, testified, and he presented the testimony of an additional witness. Following the hearing, the board completed a "Disciplinary Report Hearing Summary," which included its "findings of fact and specific evidence relied upon to support those findings[.]"[4] Thus, we conclude that the minimum due process requirements established in *Wolff* have been satisfied.

### C.  *Administrative Segregation*

Finally, Appellant asserts that he does not meet the criteria for placement in administrative segregation, and that his placement in such was not in accordance with TDOC policy, as he claims he "was not given an opportunity to be heard on his placement." TDOC Policy 404.10(IV)(A) defines "Administrative Segregation (AS)" as "[t]he non-punitive segregation of inmates, for control purposes, who are believed to be a threat to the security of the institution, the welfare of staff, or to other inmates in the community." Following a hearing for a disciplinary rule infraction, "the board may recommend that an inmate be

---

[4]Appellant did not sign this document; however, he does not argue on appeal that he did not receive it.

placed in AS when it is believed that their continued presence in the general population may present a threat to security, the staff, or other inmates and the community." TDOC Policy 404.10(VI)(3). The board must verbally advise the inmate of its recommendation, and the inmate must be given an opportunity to present a statement during the hearing. TDOC Policy 404.10(VI)(3)(a). Additionally, "[t]he board shall clearly state the reason(s) for the recommendation on the AS Placement Report sent to the Warden for approval along with any pertinent information regarding the offense which was available to the board at the panel hearing." TDOC Policy 404.10(VI)(3)(b).

Here, the Administrative Segregation Placement form recommends administrative segregation based upon Appellant's being found guilty of conspiracy to violate state law, as well as his pleading guilty to two incidents of "attempt to intimidate employees." It further states that "[t]he Board feels that [Appellant] is a threat to the staff, inmates[,] plus the security of the Institution." Appellant refused to sign the form, but the form indicates that Appellant "asked to be placed on administrative segregation[,]" demonstrating that Appellant was given an opportunity to present a statement regarding segregation. Due to the "seriousness of the charges and incidents surrounding [Appellant]," the warden approved the board's recommendation. We find that Appellant's placement into administrative segregation is supported by TDOC policy.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellant, Harold B. Schaffer, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.