IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 26, 2003

## MARK B. GORE v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 02-768-III    Ellen Hobbs Lyle, Chancellor**

---

**No. M2002-02640-COA-R3-CV - Filed October 6, 2003**

---

Mark B. Gore, an inmate in the Department of Corrections, appeals the action of the Chancery Court of Davidson County in granting a T.R.C.P. rule 12.02(6) motion to dismiss his Petition for a Writ of Certiorari. We affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Mark B. Gore, Nashville, Tennessee, Pro Se.

Paul G. Summers, Attorney General & Reporter and Stephanie R. Reevers, Associate Deputy Attorney General, for the appellees, Tennessee Department of Correction, Warden David Mills, Warden Ricky Bell, Sgt. F/N/U Settles, Employee F/N/U Henry, and Employee F/N/U Hall.

## OPINION

Mark B. Gore is an inmate in the Tennessee Department of Corrections. On March 11, 2002, he filed a Petition for a common-law Writ of Certiorari complaining of actions of the prison disciplinary board finding him guilty of attempted escape and sentencing him to thirty days punitive segregation. He alleges that he was tried before the Brushy Mountain State Disciplinary Board on September 21, 1999 on a charge of attempted escape. He further asserts that he received no notice of such charges until the date of the hearing. He alleges that he was convicted on that date of attempted escape and that his appeal to the prison warden was denied on October 7, 1999. He asserts that the trial proceedings were flawed because he was not provided with adequate notice of the charges against him and was denied an opportunity to call certain witnesses, same being Tennessee Department of Corrections Officer Connie Church and attorney Jodie A. Bell. Although the petition for certiorari shows on its face that it was filed long after the expiration of the sixty-day limitation

period in Tennessee Code Annotated section 27-9-102, Petitioner further asserts that sections 28-1-105 and 28-1-115 are sufficient to toll the statute of limitations since he had filed an action in the United States District Court for the Middle District of Tennessee under 42 USC § 1983 and that same had been dismissed without prejudice on bases not concluding his right of action.

His Petition for Certiorari was countered by a Tennessee Rule of Civil Procedure rule 12.02(6) Motion to Dismiss asserting,

> Respondents, Tennessee Department of Correction and Ricky Bell, move to dismiss the petition pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The bases of this motion are that petitioner fails to state a claim for issuance of the common law writ of certiorari as he had no liberty interest protected by due process with respect to his prison disciplinary hearing and that the petition is not timely. In support of this motion, the respondent relies upon a contemporaneously filed memorandum of law. Inasmuch as the petitioner is an inmate in the custody of the Tennessee Department of Correction, the respondent waives oral argument on this motion.

The trial court, on September 26, 2002, granted the Respondent's Motion to Dismiss, holding in pertinent part:

> The Court concludes that the petition fails to state a claim upon which relief can be granted. The degree of procedural protection that must be afforded inmates accused of disciplinary infractions depends on the nature of the sanctions involved. An inmate has no liberty interest in remaining free of disciplinary or administrative segregation, as such segregation does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 115 S.Ct. 2293, 2301; 515 U.S. 472; 132 L.Ed.2d 418 (1995). In *Sandin* the court held that a punishment of 30 days segregation was not an atypical, significant deprivation. 515 U.S. at 485-86. In *Willis v. TDOC*, 2002 WL 118970 (Tenn.Ct.App.) the Tennessee Court of Appeals, Middle Section, determined that punitive segregation was not an atypical significant deprivation. In *Littles v. Campbell*, 2002 WL 1284244 (Tenn.Ct.App.) the Court of Appeals, Western Section rejected an inmate's claim that punishment consisting of 30 days punitive segregation and placement in administrative segregation violated his right to due process. In *Littles* the court explained that unless a prisoner has a vested right in early release, he cannot state a due process claim. "Since Tennessee recognizes no constitutional right to early release, Mr. Littles cannot show that he has suffered a deprivation of a liberty interest."
> Applying the *Littles* case to this matter, the Court is persuaded by the respondents that because the petitioner has no vested right to parole, the effect of the Board's decision upon his consideration for parole is speculative and cannot serve as the basis for a liberty interest protected by the due process clause. Thus, the

petitioner's claim that the Board's decision caused him to remain classified to maximum security and resulted in his ineligibility for parole triggering due process protection must fail. Additionally the petitioner's punishment is in keeping with punishment imposed in cases previously determined by the federal courts and the Tennessee Court of Appeals not to implicate due process considerations.

The Court also finds that the petition is time-barred. According to the petition the Board's decision finding the petitioner guilty of attempted escape occurred on September 21, 1999. A subsequent appeal of the Board's decision to Warden David Mills was denied on October 7, 1999. The petition was signed on April 9, 2002. The petitioner, however, claims that his petition is properly before the Court pursuant to Tennessee Code Annotated section 28-1-105 and 115 because he initially sought relief regarding the claims presented here in a 42 U.S.C. § 1983 action filed in federal court. Saving statutes, however, do not apply to suits against the State unless the State specifically consents to and acknowledges that the statute applies to it. *Brown v. State*, 783 S.W.2[d] 557 (Tenn.App.1989); *Webster v. Tennessee Board of Regents*, 902 S.W.2d 412, 414 (Tenn.Ct.App.1995).

It is therefore ORDERED that the respondents' motion to dismiss is granted on the grounds that the petition is time-barred and fails to state a claim upon which relief can be granted. The petition is dismissed with prejudice. Court costs are assessed against the petitioner, for which execution may issue if necessary.

Petitioner timely appealed.

A Tennessee Rule of Civil Procedure rule 12.02(6) motion serves the same function as did a demurrer in common-law pleading. *State ex. rel. Canale v. Minimum Salary Dept. of AME Church, Inc.*, 477 S.W.2d 11 (Tenn.1972). Both prior to the advent of the Tennessee Rules of Civil Procedure and subsequent thereto, a motion to dismiss and a demurrer are subject to the same strict rules of construction.

It is held in a number of our cases that a motion to dismiss a petition for certiorari is to be treated like a demurrer and on such motion the allegations of the petition are to be treated as true except as to facts shown by the record. In *Wilson v. Moss*, 54 Tenn. 417, 419, it is said: "Upon a motion to dismiss a petition for certiorari, the facts stated in the petition are taken to be true, except as to matters contradicted by the record."

*Royal Clothing Company v. Holloway*, 347 S.W.2d 491, 492 (Tenn.1961).

The Supreme Court of Tennessee long ago stated: "The motion to dismiss involves the question whether the matters stated in the petition shall be tried upon their merits, or not. It is in the nature of a demurrer to other pleadings; and, admitting the facts stated in the petition to be true, it denies that they are sufficient in law to entitle the party to the prayer of the petition. If the motion

be well taken, the petition is dismissed; if not, it is retained, and the case, or the matter contained in it, is tried upon its merits." *Studdurt v. Fowlkes*, 32 Tenn. 537, 538 (Tenn.1852).

The tension inherent between the factual allegations in a petition for a common-law writ of certiorari and a Tennessee Rule of Civil Procedure rule 12.02(6) motion to dismiss, employed as a response thereto, has been repeatedly emphasized in previous decisions of this Court. However, in the wake of our supreme court's decision in *Tony Willis, et al. v. Tennessee Department of Correction*, a Tennessee Rule of Civil Procedure rule 12.02(6) motion to dismiss has been relegated to minimal utility as a practical vehicle for challenging the petition. *See Willis v. TDOC*, No. M2000-01397-SC-R11-CV, 2003 WL 22019138, *3 (Tenn.August 27, 2003). Like the demurrer before it, a Tennessee Rule of Civil Procedure 12.02(6) motion presents to the court - - - trial or appellate - - - only a question of law. As the Supreme Court held in *Willis*:

> The sole purpose of a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence. Doe v. Sundquist, 2 S.W.3 919, 922 (Tenn.1999); Riggs v. Burson, 941 S.W.2d 44, 47 (Tenn.1997). When reviewing a dismissal of a compliant under rule 12.02(6), this Court must take the factual allegations contained in the complaint as true and review the trial court's legal conclusions de novo without giving any presumption of correctness to those conclusions. See e.g., Doe v. Sundquist, 2 S.W.3 at 922. Because a motion to dismiss a complaint under rule 12.02(6) challenges only the legal sufficiency of the complaint, courts should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. See e.g., Trau-Med of Am., Inc. v. Allstate Ins. Co. 71 S.W.3d 691, 696 (Tenn.2002).

*Willis v. T.D.O.C.*, at *2.

The practical limitations of Tennessee Rule of Civil Procedure 12.02(6) are obvious. If the allegations of the complaint assert that the waters of the mighty Mississippi have turned blood red, the rule 12.02(6) motion must admit that the waters are red. If the petition asserts that the moon is flat, the motion must admit that the moon is flat. If, as in *Willis*, the petition alleges no notice of the charges in a disciplinary proceeding against an inmate or a refusal of the department to allow the inmate to present exculpatory evidence at the disciplinary proceedings, the rule 12.02(6) motion must admit that those allegations are true.

> If the petitioners received no notice of the charges against them, this would be patently prejudicial; if they did receive notice, but that notice was somehow defective, its prejudicial nature would depend on the particular shortcomings of the challenged notice.
> Second, Tharpe asserts that he was prevented from obtaining and introducing relevant "exculpatory" evidence. If true, this conduct would be contrary to the

prisoners' qualified right to introduce evidence and call witnesses in disciplinary proceedings.

*Willis*, 2003 WL 22019138, *5.

The efficacy of Tennessee Rule of Civil Procedure rule 12.02(6) motion is not totally displaced by *Willis*. If the petition for certiorari shows on its face that it was filed beyond the sixty-day statute of limitations provided by Tennessee Code Annotated section 27-9-102 this defect is fatal to subject matter jurisdiction and the motion is well taken. If the petition for certiorari itself exhibits portions of the proceedings within the agency and the documents so exhibited establish matters that are fatal to the petition, the rule 12.02(6) motion would be well taken as such exhibited documents form a part of the petition for all purposes. *See* T.R.C.P. rule 10.03.

At common law a demurrer could not "speak":

[I]t is clear that it can lie only for objections apparent upon the face of the bill itself, either from the matter asserted, or omitted, or from defects in the frame thereof. A demurrer cannot, therefore, state what does not appear from the face of the bill, otherwise it would be what has been emphatically called a speaking demurrer, that is, a demurrer wherein a new fact is introduced in order to support it. *Allpress v. Lawyers Title Ins. Corp.*, 405 S.W.2d 572, 573 (Tenn.1966).

A Tennessee Rule of Civil Procedure rule 12.02(6) motion is not so inhibited but when it does "speak" it is converted into a Tennessee Rule of Civil Procedure rule 56 motion for summary judgment by the express provisions of Tennessee Rule of Civil Procedure rule 12.02 providing, in pertinent part:

If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56. Tenn. R. App. P. 12.02.

As relates to a petition for certiorari wherein the writ has not been issued by the trial court commanding that the record before the administrative tribunal be filed with the court, if extraneous material is exhibited by a defendant to a Rule 12.02(6) motion, thus converting the motion into a Rule 56 motion, the burden rests upon the moving party to affirmatively establish that the non-moving party cannot establish an essential element of his case, or that the moving party can conclusively establish an affirmative defense defeating the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993). Absent a defect in the petition failing to establish a colorable claim for relief, the moving party obviously cannot establish a basis for summary judgment at this stage without having the entire record before the court.

THE MECHANICS OF CERTIORARI

The practical use of a rule 12.02(6) motion is markedly inhibited by the same strictures that inhibited the demurrer at common law. It cannot be used to test the truth of the allegations in the complaint. Its use is even more narrowly restricted when the petition in issue seeks a writ of certiorari. Because of the continued use of rule 12.02(6) motions to counter petitions for certiorari filed by inmates of the Department of Corrections, and the clear message of *Willis* as to the practical futility of such procedure, it is well at this point to consider the mechanics of a petition for common law certiorari.

The issuance by the trial court of a writ of certiorari is not an adjudication of anything. It is neither a victory nor a defeat for the competing parties. It is simply a command by the trial court to the inferior tribunal or administrative agency to send the record made before the agency in the proceeding to the court for review of that record. Then the trial court upon review of the record made before the administrative tribunal will enter a judgment of either quashal or affirmance. *Conners v. City of Knoxville*, 189 S.W. 870, 872 (Tenn.1916).

The Court of Appeal of Illinois asserted imminently correct certiorari practice principles in *Tanner v. Court of Claims*, 629 N.E.2d 696 (Ill.App.1994). In that case the plaintiff alleged before the court of claims that the University of Illinois breached his contract when it failed to award him a PhD. His claim was denied and he sought a writ of certiorari from the circuit court contending that his due process rights were violated by the court of claims during its deliberative process. Before a writ of certiorari could ever be issued Defendant filed a motion to dismiss which was granted by the trial court. The court of appeal reversed, holding:

> The principles applicable to *certiorari* practice have been set forth by the supreme court. Most recently, the court stated:
>> The common law writ of *certiorari* was developed to provide a means whereby a petitioner who was without avenue of appeal or direct review could obtain limited review over action by a court or other tribunal exercising quasi-judicial functions. The purpose of the writ was, and is, to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, whether that body proceeded according to the applicable law. If the circuit court, on the return of the writ, finds from the record that the inferior tribunal proceeded according to law, the writ is quashed; however, if the proceedings are not in compliance with the law the judgment and proceedings shown by the return will be quashed." (*Stratton v. Wenona Community Unit District No. 1* (1990), 133 Ill.2d 413, 427 [141 Ill.Dec.453, 458], 551 N.E.2d 640, 645).
>> When confronted with a complaint for common law *certiorari*, the court has only two powers, mainly, to quash the proceeding or to quash the writ and dismiss the petition. (*People ex rel. Nelson Brothers Storage & Furniture Co. v. Fisher* (1940), 373 Ill. 228, 230, 25 N.E.2d 785, 786.) The issues

cannot be tried on allegations contained in the petition or on any facts except on the record of the proceedings as returned. (*Hine v. Roberts* (1923), 309 Ill. 439, 447, 141 N.E. 166, 169.) . . .

. . . .

Where a plaintiff brings into issue the alleged violation of his procedural and substantive rights, the petition is not subject to dismissal, as such issue cannot be determined as a matter of law upon the bare allegations of the petition. 14 C.J.S. *Certiorari* § 76, at 111 (1991).

The common theme in each of these principles is that the record from the inferior tribunal must normally be made a part of the trial court record for the court to review. In this case, the record before the Court of Claims was never filed in the circuit court because the petition for writ of *certiorari* was dismissed before the writ was ever issued.

We recognize the issuance of a writ of *certiorari* is within the discretion of the court (*Stratton*, 133 Ill.2d at 428, 141 Ill. Dec. at 459, 551 N.E.2d at 646) and there may be instances when the writ is properly denied if, as a matter of law, the court is able to determine plaintiff cannot prevail or he is not entitled to the review he seeks. *Deslauries v. Soucie* (1906), 222 Ill. 522, 524, 78 N.E. 799, 800.) In this case, dismissal would have been proper if the only claim plaintiff made was based on the failure of the Court of Claims to turn over the hearing commissioner's notes. These materials are not subject to disclosure to plaintiff. *Starnawski v. License Appeal Comm'n* (1981), 101 Ill.App.3d 1050, 1053, 57 Ill.Dec.422, 426, 428 N.E.2d 1102, 1106; see also *Fayerweather v. Ritch* (1904), 195 U.S. 276, 306-07, 25 S.Ct. 58, 67, 49 L.Ed. 193, 213; *United States v. Morgan* (1941), 313 U.S. 409, 422, 61 S.Ct. 999, 1004-05, 85 L.Ed. 1429, 1435-36.

However, plaintiff also alleges the Court of Claims failed to answer or resolve six specific issues which he raised to support the breach of contract claim and applied the wrong standard of review. Whether plaintiff was subject to a deprivation of due process for these reasons is not susceptible of resolution without an examination of the underlying record before the Court of Claims. For example, from the limited pleadings in the record before us, it is impossible to determine the nature, extent, and terms of the alleged contract which the University supposedly breached.\

. . . .

On remand, the circuit court is directed to issue the writ and upon its return by the Court of Claims, to determine whether the alleged due process violations are supported by the record of proceedings from the Court of Claims.

*Tanner v. Court of Claims*, 629 N.E.2d 696, 698-99 (Ill.Ct.App.1994).

In Tennessee, the proceedings relative to the attempted removal from office of the Chief of Police of Knoxville as reflected in the two reported decisions of the supreme court relative thereto are enlightening and compatible with the principles laid down by the Illinois Court of Appeals in *Tanner. See Conners v. City of Knoxville*, 136 Tenn. 428, 189 S.W. 870 (1916); *City of Knoxville v. Conners*, 139 Tenn. 45, 201 S.W. 133 (1918).

Clearly, the issuance of the writ of certiorari decides nothing but merely provides a vehicle for the review by the trial court of the record made before the administrative tribunal. While reported cases have repeatedly held that the issuance of a common law writ of certiorari is not a matter of right but a matter resting within the sound discretion of the trial court; *Boyce v. Williams*, 215 Tenn. 704, 389 S.W.2d 272 (1965); *Hewgley v. Trice*, 340 S.W.2d 918 (Tenn.1960); *Yokley v. State*, 632 S.W.2d 123 (Tenn.Ct.App.1981); such general rule must yield to practical necessity. If the petition for common law certiorari alleges deprivations of the sort addressed in *Willis*, and the truth of such allegations cannot be tested by a rule 12.02(6) motion, failure to issue the writ of certiorari is almost certainly an abuse of discretion.

Beyond the mechanics of common law certiorari, the principles relative to the scope of review applicable in both the trial and appellate courts are still those principles set forth in *Yokley v. State*, 632 S.W.2d 123 (Tenn.Ct.App.1981):

> In *State ex rel. McMorrow v. Hunt*, 137 Tenn. 243, 192 S.W.931 (1917), a leading case on the applicability of the common law writ of certiorari, the court said:
>
>> It must be borne in mind that the functions of certiorari are simply to ascertain the validity of proceedings before a court of justice, either on the charge of their invalidity, because the essential forms of law have not been observed, or on that of the want of jurisdiction in the court entertaining them. The writ has never been employed to inquire into the correctness of the judgment rendered where the court had jurisdiction, and was therefore competent. Hence it has been held that the supervisory jurisdiction of the court on a certiorari must be restricted to an examination into the external validity of the proceedings had in the lower court. *It cannot be exercised to review the judgment as to its intrinsic correctness either on the law or on the facts of the case.* The supervisory powers of the court should not be confounded with its appellate jurisdiction. (Emphasis supplied). *Id.*, 137 Tenn. at 250, 192 S.W. at 932. *See also McGee v. State*, 207 Tenn. 431, 340 S.W.2d 904 (1960); *Pack v. Royal-Globe Insurance Co.*, 224 Tenn. 452, 457 S.W.2d 19 (1970). The holding of *McMorrow, supra*, is clear and unmistakable that the common law writ of certiorari is not available to test the intrinsic correctness of the law or facts of a particular case.

*Yokley v. State*, 632 S.W.2d at 126 (Tenn.Ct.App.1981).

THE WILLIS LIMITATION OF SANDIN

On June 19, 1995, the United States Supreme Court released its opinion in *Sandin, Unit Team Manager, Halawa Correctional Facility v. Conner, et al.*, 515 U.S. 472 (1995). The inmate Conner alleged that Halawa prison officials deprived him of procedural due process when an adjustment committee refused to allow him to present witnesses during a disciplinary hearing and then sentenced him to segregation for misconduct. The Supreme Court held that such segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Following the release of the *Sandin* opinion this Court, in a number of opinions including *Ahkeen v. Campbell*, No. M2000-02411-COA-R3-CV, 2001 WL 1346250, 2001 Tenn. App. Lexis 815 at *14-15 (Nov. 2,2001)(no T.R.A.P. 11 app. filed) and *Tony Willis, et al. v. T.D.O.C.*, 2002 WL 1189730 (Tenn.Ct.App.2002)(perm.app.granted) held:

> In the context of prison disciplinary proceedings, both the Tennessee Supreme Court and the United States Supreme Court have recognized the broad discretion necessary to allow prison officials to perform their responsibilities and, in shaping the law in this area, have also taken into consideration the realities of life in prison. Courts have recognized that lawfully convicted prisoners may be subjected to disciplinary proceedings which do not ensure "a full panoply of rights." *Wolff*, 415 U.S. at 540, 94 S.Ct. at 2967. A prisoner's interest in sanctions which may be imposed pursuant to such proceedings is a liberty or property interest, and that interest does not extend to sanctions which do not "impose atypical and significant hardship" beyond the ordinary incidents of prison life. *Sandin*, 115 S.Ct. at 2295. Therefore, we conclude that the "essential requirements of the law" in this area are those established by the due process clause. Where the Tennessee legislature has not imposed more stringent requirements on prison disciplinary procedures, we decline to do so. Without a constitutional or statutory "essential requirement," the writ of certiorari procedure does not authorize courts to create one. Therefore, a failure to sufficiently allege a due process violation in the conduct of prison disciplinary proceedings is also a failure to allege, under common-law writ of certiorari grounds, that a disciplinary board has acted illegally by not following the essential requirements of the law. Accordingly, allegations that the board acted illegally by failing to follow TDOC procedures do not, in and of themselves, support issuance of a writ of certiorari to review the legality of the board's decision. *15 Ahkeen*, 2001 Tenn.App. LEXIS 815, at *13-22.

2002 WL 1189730 *14-15 (quoting *Ahkeen*).

The reversal by the supreme court of our decision in *Willis* clearly restricted the application of Sandin to due process issues under the Fourteenth Amendment to the Constitution of the United States and under Article 1, section 8 of the Constitution of Tennessee. This resulted in the explicit

recognition that common law certiorari is available to redress grievances not rising to due process level and is not otherwise limited in scope to constitutional deprivations. The supreme court in *Willis* held:

> The Uniform Disciplinary Procedures provide the principal means of ensuring that disciplinary proceedings are fair, reliable and impartial. The integrity of disciplinary systems is important to the stability of a corrections program. If the Tennessee Department of Correction were to violate its own policies to such a degree that it administered punishment without a reliable determination of guilt, such a violation would be without legal authority and an abuse of discretion. Accordingly, we hold that the petition states a cause of action with respect to its allegations that the disciplinary board violated its own rules and policies and that the petitioner was substantially prejudiced thereby.

*Willis*, 2003 WL 22019138, *8.

It follows that if the petition in this case were timely filed under Tennessee Code Annotated section 27-9-102, the allegations therein are sufficient to compel issuance of a writ of common law certiorari and review by the trial court of the record made at the disciplinary hearing.

THE STATUTE OF LIMITATIONS

The Petition for Common Law Writ of Certiorari was filed in this case on March 11, 2002. The petition alleges that Gore was charged before the Brushy Mountain State Prison Disciplinary Board with attempted escape and subjected to a hearing on this charge on September 21, 1999. He was on that same date found guilty of the charge and sentenced to thirty days punitive segregation. He filed a timely appeal to Warden David Mills which was denied on October 7, 1999 with a note stating "no due process violation noted." The disciplinary proceeding became final with the October 7, 1999 denial of his appeal by the warden. Tennessee Code Annotated section 27-9-102 provides that a petition for writ of certiorari must be filed within sixty days from the entry of the final order or judgment. This time limit applies to both common law and statutory writs of certiorari. *Fairhaven Corp. v. Tennessee Health Facilities Commn.*, 566 S.W.2d 885, 886 (Tenn.Ct.App.1976). Failure to file within the statutory time limit deprives the court of subject matter jurisdiction. *Wheeler v. City of Memphis*, 685 S.W.2d 4 (Tenn.Ct.App.1984).

Since more than sixty days elapsed between October 7, 1999 and March 11, 2002, and the fatal jurisdictional defect is evidenced by the face of the complaint, the motion to dismiss in this particular case is well taken unless it can be avoided under the saving statutes, T.C.A. 28-1-105 and 28-1-115, as asserted in the complaint. Petitioner claims that his suit filed in federal court and subsequently dismissed on grounds not adjudicating the merits of the claim is sufficient to toll the sixty day statute of limitations provided by T.C.A. 27-9-102. His assertion is without merit because:

1. His suit under 42 U.S.C. § 1983 was filed in federal court on September 9, 2000. While that particular case was filed within the one year statute of limitations provided under section 1983, it was filed long after the sixty-day statute of limitations provided by T.C.A. 27-9-102 had expired.
2. Section 1983 is a federal act predicated upon the Fifth and Fourteenth Amendments to the United States Constitution and is thus predicated upon the due process clause of the Fourteenth Amendment in this particular case. As thirty days punitive segregation does not affect a liberty interest under *Sandin*, such allegations of due process violations would fail under the express holding in *Willis*.
3. Tennessee Code Annotated sections 28-1-105 and 28-1-115 do not specifically state that they are applicable to the sovereign State of Tennessee. These statutes have been held to be in derogation of sovereign immunity and do not effective to toll any statute of limitations as to the State of Tennessee. *Nance v. City of Knoxville*, 883 S.W.2d 629 (Tenn.Ct.App.1994); *Brown v. State*, 783 S.W.2d 567 (Tenn.Ct.App.1989); *Stokes v. University of Tennessee*, 737 S.W.2d 545 (Tenn.Ct.App.1987) (cert. denied 485 U.S. 935, 108 Sup.Ct.1110, 99 L.Ed.2d 271, (1988)); *Lynn v. City of Jackson*, 63 S.W.3d 332 (Tenn.2001).

Since the 42 U.S.C. section 1983 case was not itself filed within the sixty day limitations of Tennessee Code Annotated section 27-9-102, it could not in any event be effective to toll the sixty day limitation. Since the 42 U.S.C. section 1983 action is predicated on federal due process, *Sandin* remains effective to bar the action under *Willis* when the only discipline in issue is a sentence of thirty days solitary confinement. The saving statutes are not effective against the State of Tennessee. For these reasons the judgment of the trial court is in all respects affirmed and costs are assessed to Appellant.

 

_____
WILLIAM B. CAIN, JUDGE