# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
## JULY 19, 2007 Session

## MOORE FAMILY PROPERTIES, LLC, ET AL. v. PULL-A-PART OF TENNESSEE, LLC, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-06-0451    Kenny W. Armstrong, Chancellor

### No. W2007-00457-COA-R3-CV - Filed November 28, 2007

This appeal involves a review of actions taken at a meeting of the Memphis City Council. When the council members voted on a resolution, for unknown reasons, the electronic voting machine did not record an entry for one of the council members. This resulted in six votes being cast in favor of the measure and six votes against it. The omitted council member orally expressed his intention to vote in favor of the resolution before the Chairman announced the result of the vote. The Chairman then called for the electronic voting machine to be cleared so that all members could re-enter their votes. After the second vote, the Chairman declared that the resolution passed by a vote of seven to six. The appellants filed a petition for a writ of certiorari in the chancery court, alleging that the first vote was final and that the City Council acted illegally by taking a second vote. Upon review of the record of the proceedings, the trial court granted summary judgment to the City of Memphis and the Memphis City Council. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

David Wade, J. Lewis Wardlaw, Memphis, TN, for Appellants

Allan J. Wade, Lori Hackleman Patterson, Brandy S. Parrish, Memphis, TN, for Appellee, City of Memphis and Memphis City Council

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

At its January 3, 2006 meeting, the Memphis City Council considered a resolution to approve a proposed planned development that would allow Pull-A-Part of Tennessee, LLC, to operate a self-service auto salvage yard located along Farrisview Road (the "Development"). Councilman Rickey Peete moved for the resolution's approval. The Council heard comments from the applicant and from citizens opposing the Development, and a member of the local Office of Planning and Development discussed its recommendations. Council members then asked questions and further discussed the Development. At the conclusion of the discussion, the Council Chairman asked the council members to cast their votes on the resolution.

The Memphis City Council uses an electronic voting device to cast votes, and council members may choose "Yea," "Abstain," or "Nea" when voting. There are two large screens located on either side of the Council Chamber, which display an alphabetical list of the council members' names. When a council member votes, his or her name is illuminated and the vote is displayed. An electronic voice then reads the council member's names in alphabetical order and reads their votes. After reading the list, the electronic voice recites the total votes cast for or against the measure.

On this particular vote, the voting machine recorded six votes for the resolution and six votes against the resolution, but it did not record an entry of "Yea," "Nea," or "Abstain" for Councilman Peete. An audio tape recording of the meeting reflects some noise or commotion arising as the electronic voice was reading the list of votes of the council members, and some council member stating, "Okay Rickey." When the electronic voice concluded its recitation, Councilman Peete immediately stated, "Madam Chairman, please show me voting yes on this item." The Chairman then asked the Comptroller to clear the ballot so that the council members could vote again. A representative of those opposing the Development objected to the Council's taking another vote. The Chairman again told the Comptroller to clear the previous votes from the machine because she "did not call the vote." The Chairman then asked all council members to please vote and to stay in their seats.[1]  This time, the electronic voting machine recorded seven votes in favor of the Development and six votes against it; therefore, the resolution passed.

On March 3, 2006, Moore Family Properties, LLC, and Roy Enterprises, LLC ("Appellants"), as neighboring property owners opposing the Development, filed a petition for writ of certiorari in the Chancery Court of Shelby County. The petition alleged that the Memphis City Council's actions in taking a second vote were illegal, arbitrary, capricious, and not conducted in the manner required by proper procedure.

---

[1]  Counsel for the City of Memphis and the Memphis City Council suggests that Councilman Peete was not in his seat when the initial votes were cast, which is why the Chairman directed the Councilmembers to vote again and to stay in their seats. There is nothing in the record beyond the Chairman's statement to support or discredit this suggestion.

The City of Memphis and the Memphis City Council filed a motion for summary judgment. In Appellants' response, they stated that they did not seek to challenge the "intrinsic merits" of the Development proposal, but instead challenged the "unauthorized actions taken by the Council in approving the Development by an illegal vote." Appellants basically claimed that when the electronic voting device recorded the first votes cast by the council members, the vote immediately became final because it was "announced" by the display screens and by the electronic voice. After reviewing the record of the proceedings before the Memphis City Council,[2] including audio tapes of the proceedings, the Council's Rules of Procedure, and affidavits, the trial court granted summary judgment to the City of Memphis and Memphis City Council. The trial court's order includes the following findings:

1. That no vote of the Council is final until the Chairman of the Council meeting announces the result of the vote.
2. That the second vote of the Council was procedurally correct.
3. That the Council did not act arbitrarily, capriciously or illegally in approving the Pull-A-Part planned development.

The order granting summary judgment to these parties was made final pursuant to Tenn. R. Civ. P. 54.02.[3] Appellants filed a motion to alter or amend, which was denied, and then filed a timely notice of appeal.

## II. ISSUES PRESENTED

Appellants present the following issue for review, which we slightly restate:
Whether the trial court erred in granting summary judgment, finding that the second vote was legally and procedurally correct because the first vote was not final until announced by the Chairman. For the following reasons, we affirm the decision of the chancery court.

---

[2] To issue a writ of certiorari means to order the lower tribunal or administrative agency to send the record made in the lower proceedings to the court for review. *Davis v. Shelby County Sheriff's Dep't*, No. W2006-00980-COA-R3-CV, 2007 WL 609159, at *3, n.2 (Tenn. Ct. App. Feb. 28, 2007) (citing *Gore v. Tenn. Dep't of Correction*, 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003)). Upon receipt of the record, the court then determines whether the petitioner is entitled to relief. *Id.* (citing *Jeffries v. Tenn. Dep't of Correction*, 108 S.W.3d 862, 868 (Tenn. Ct. App. 2002)). Therefore, it appears that the trial court in this case granted the petition for writ of certiorari and subsequently determined that Appellants were not entitled to relief.

[3] The applicant seeking approval of the Development, Pull-A-Part, LLC, was also named as a defendant in Appellants' petition for writ of certiorari. Pull-A-Part filed a motion to dismiss the claims against it, but the record is unclear as to whether the motion has been addressed by the trial court.

## III. Standard of Review

Administrative determinations, judicial and quasi-judicial in nature, which are accompanied by a record of the evidence produced and the proceedings had, are properly reviewed by a writ of certiorari. ***Thompson v. Dep't of Codes Admin., Metro. Gov't of Nashville and Davidson County***, 20 S.W.3d 654, 659 (Tenn. Ct. App. 1999) (citing *Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983)). The action of the Memphis City Council giving approval to a planned development was administrative rather than legislative in nature, and any challenge to such action is by writ of certiorari. ***McCallen v. City of Memphis***, 786 S.W.2d 633, 634 (Tenn. 1990). Common law certiorari is provided for in Tenn. Code Ann. § 27-8-101 (2000) as follows:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy. This section does not apply to actions governed by the Tennessee Rules of Appellate Procedure.

Therefore, review under the common law writ is limited to whether the inferior board or tribunal has (1) exceeded its jurisdiction, or (2) acted illegally, arbitrarily, or fraudulently. *McCallen*, 786 S.W.2d at 638 (citing *Hoover Motor Exp. Co. v. Railroad and Public Util. Comm'n*, 195 Tenn. 593, 604, 261 S.W.2d 233, 238 (1953)).

## IV. Discussion

On appeal, Appellants maintain that the Memphis City Council acted illegally by "failing to follow the applicable voting rules" in passing the resolution that approved the Development.

The Charter of the City of Memphis, in Article 7, Section 44, provides that "[t]he Council may determine the rules for its procedure . . . ." Accordingly, the City Council has adopted "Rules of Procedure" that govern the conduct of its meetings. Relevant to this appeal, some of those Rules provide:

> A. DUTIES OF THE CHAIRMAN
> 1.   The Chairman shall preside at all meetings of the Council.
> 2.   The Chairman shall have general direction of the Council Chamber and shall preserve order. . . .
> 3.   The Chairman shall decide questions of order, subject to appeal of the council by any member, and shall put each question. The Chairman shall have a vote on all matters.
> . . .
> C. PROCEEDINGS IN COUNCIL MEETINGS
> . . .

-4-

26.    A roll call vote shall be taken by the Chairman on all ordinances and on all resolutions involving appropriations, real property or funding. . . . After the Chairman has put a question, or after there has been a roll call vote of the Council, the Chairman shall not entertain a motion until a decision of the Council has been *declared by the Chairman*.

. . .

34.    If any question shall arise which is not provided for in these Rules, the same shall be governed by <u>Roberts Rules of Order</u>, which is hereby adopted.

(emphasis added). The City of Memphis and the City Council contend that a vote is not final until the result is announced by the Chairman, relying upon Rule 26. Alternatively, the City contends that if Rule 26 does not govern the issue, then *Robert's Rules of Order* provides for the same result. In response, Appellants claim that Rule 26 does not apply because "it does not address the closure of voting on a previous vote; rather[,] it is limited to the procedure for the chair to entertain a subsequent motion." Apparently, Appellants interpret Rule 26 as only requiring a declaration by the Chairman before a subsequent motion can be entertained, but not addressing the effectiveness of a vote before the Chairman's announcement.

Clearly, Rule 26 requires the Council Chairman to declare the decision of the Council at some point after a roll call vote, and further action cannot be taken until the Chairman's declaration. Arguably, then, the vote is not finalized until the Chairman has declared the Council's decision. Nonetheless, even assuming *arguendo* that Rule 26 does not address the effectiveness of an unannounced vote, *Robert's Rules* provides a clear answer. Section 4 of *Robert's Rules* describes the basic steps for consideration of a motion: "(1) members *debate* the motion (unless no member claims the floor for that purpose); (2) the chair *puts the question* (that is, puts it to a vote); and (3) the chair *announces the result* of the vote." (emphasis in original). In describing the third step, Section 4 provides that "a member has the right to change his vote up to the time the result is finally announced." Section 4 further addresses situations where a chairman is in doubt as to the result of a vote, and it instructs the chairman not to announce the result, but to retake the vote by a more precise method.

Section 44 addresses the roll call voting process:

At the conclusion of the roll call, the names of those who failed to answer can be called again, or the chair can ask if anyone entered the room after his name was called. Changes of vote are also permitted at this time, before the result is announced.

The secretary gives the final number of those voting on each side, and the number answering *present*, to the chair, who announces these figures and declares the result.

. . .

> *Electrical roll-call vote installation.* Some legislative bodies are equipped with various forms of electrical tabulation, which take the place of roll call.

Upon review of these rules, it is clear that the Council's vote does not become effective or final until the result is announced by the Chairman. When the Chairman has not yet declared the Council's decision, any member may still change his or her vote, the Chairman may call for additional votes from those who failed to answer the roll call, or the Chairman may retake a vote if the first method was inconclusive. The Council's decision is not final merely because votes have been cast or because those present at the meeting might be able to ascertain the number of council members initially voting for or against the resolution. For example, a vote taken by a show of hands does not become final merely because audience members may be able to determine which side has the majority. *Robert's Rules* expressly provides that the secretary will give the final number of votes to the Chairman, and the Chairman then announces the figures and declares the result.

Appellants rely upon a specific provision addressing electronic voting that is included in the most recent version of *Robert's Rules* to support their claim that "the electronic roll-call vote machine itself announces the voting figures and declares the result." We note that the newer version of *Robert's Rules* is not in the record before us, but the section discussed in Appellants' brief supports our conclusion that the vote is not final until announced by the Chairman:

> Various forms of electronic devices have become available to take the place of a roll-call vote. Any deliberative body can use such a system with appropriate adjustments to conform as closely as possible with the rules given above for roll-call voting procedure. When used, there is usually a presumption of technical, mechanical accuracy of the electronic system if properly used by the members. Changes of vote after the result has been announced *by the chair* on the allegation of machine error are not entertained. On the same grounds, a recapitulation (the secretary reading the names of those voting "aye" or "no") is not permitted.

(emphasis added). The new rule still requires the Chairman to announce the result of the vote, as the voting machine does not take the place of the Chairman in presiding over meetings. If anything, the voting machine assumes the role of the secretary in tallying the votes cast and relaying that information to the Chairman for his or her announcement.

Applying these principles to the case at bar, we find that the Council did not act illegally in retaking the vote. As the Chairman noted, she "did not call the vote" the first time when Councilman Peete orally cast his vote. The council members' entries into the electronic voting machine did not bind the Council to a decision before the Chairman declared the result. After the Chairman asked the council members to re-vote, she declared, "[t]he motion carries." The Development was approved upon the Chairman's declaration of the Council's decision.

## V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court.  Costs of this appeal are taxed to Appellants, Moore Family Properties, LLC, and Roy Enterprises, LLC, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.