IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned On Briefs October 15, 2012 Session

## WALTER HIMES v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Direct Appeal from the Chancery Court for Wayne County**
**No. 2011-CV-4895     Stella Hargrove, Judge**

**No. M2011-02546-COA-R3-CV - Filed December 6, 2012**

This appeal involves a petition for writ of certiorari filed by a state prisoner. The prisoner was found guilty of a disciplinary offense while in the custody of the Tennessee Department of Correction. After exhausting his administrative remedies, the prisoner filed a petition for writ of certiorari in the trial court. The trial court granted the petition. After reviewing the record, the trial court found that the prisoner was not entitled to relief and dismissed the petition. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Walter Himes, *Pro Se*.

Robert E. Cooper, Jr., Attorney General and Reporter, Bill Young, Solicitor General and Jennifer L. Brenner, Assistant Attorney General, for the appellees, Tennessee Department of Correction, et al.

## OPINION

### I. Background and Procedural History

Walter Himes ("Mr. Himes") is an inmate in the custody of the Tennessee Department of Correction ("TDOC"). At all times relevant to this dispute, Mr. Himes was housed at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. On October 1, 2010, Mr. Himes was charged with the disciplinary offense of participating in security threat group

activity.[1]  The TDOC's brief also refers to this offense as participation in "gang" activity. The disciplinary report filed against Mr. Himes explained that, following an investigation, prison officials discovered that Mr. Himes ordered an inmate, who in turn ordered a second inmate, to assault another inmate in retaliation for a previous altercation involving a fellow gang member.[2]  Following a disciplinary hearing, the SCCF disciplinary board (the "Board") found Mr. Himes guilty of the offense, and as a result, imposed the following punishment: twenty days punitive segregation, a $5.00 fine, administrative segregation placement, and the loss of one hundred and eighty (180) days of sentence reduction credits.  Subsequently, Mr. Himes appealed to the warden and the TDOC commissioner, but each affirmed his conviction.

On January 18, 2011, Mr. Himes filed a petition for writ of certiorari in the Chancery Court of Wayne County.  In his petition, Mr. Himes alleged, *inter alia*, that the Board's decision was based on insufficient evidence, the Board failed to follow its policies and procedures resulting in a denial of his due process rights, and the Board acted arbitrarily by convicting and punishing him for the offense.  TDOC did not oppose Mr. Himes' petition, and on May 3, 2011, the trial court entered an order granting Mr. Himes' petition for writ of certiorari.  Thereafter, TDOC filed a certified copy of the administrative record and submitted a brief to the trial court, and Mr. Himes responded by filing his own brief in support of his petition.  After reviewing the record, on August 11, 2011, the trial court found that Mr. Himes was not entitled to relief and entered an order dismissing the petition.  On September 9, 2011, Mr. Himes filed a Motion for a New Trial or Leave to Amend, asking the trial court to reconsider its judgment or grant him leave to amend his original petition in light of his *pro se* status.  On November 1, 2011, the trial court summarily denied the motion. Mr. Himes timely filed a notice of appeal to this Court.

## II.  Issues Presented

Mr. Himes presents the following issues, as stated in his brief, for our review:

(1)     Whether the trial court erred in dismissing [Mr. Himes'] petition after

---

[1]Pursuant to TDOC Policy No. 502.05(VI)(A)(47), this offense is defined as follows:

Participation in Security Threat Group Activities (PGA) (Class A):  To organize, promote, encourage, or directly participate in a security threat group or security threat group activity.

[2]According to the record, Mr. Himes was the leader of a prison gang, and the two inmates ordered to effectuate the assault held positions below him in the hierarchy of the gang.

the disciplinary board denied him of his limited due process rights,

(2)     Whether the Trial Court erred in dismissing [Mr. Himes'] petition for failure to state a claim after having previously granted certiorari review based on the merits, and

(3)     Whether the Trial Court erred in denying [Mr. Himes'] Motion for a New Trial or Leave to Amend, in light of his *pro se* filing status.

### III.  Standard of Review

As this Court recently explained in *Schaffer v. Tenn. Dep't of Corr.*, No. M2010-01742-COA-R3-CV, 2011 WL 1842971 (Tenn. Ct. App. May 12, 2011):

"The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals." *Jackson v. Tenn. Dep't of Corr.*, No. W2005–02240–COA–R3–CV, 2006 WL 1547859, at *3 (Tenn. Ct. App. June 8, 2006) (citing *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1988)).  The issuance of a writ of common-law certiorari is not an adjudication of anything.  *Keen v. Tenn. Dep't of Corr.*, No. M2007–00632–COA–R3–CV, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008) (citing *Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003)).  Instead, it is "simply an order to the lower tribunal to file the complete record of its proceedings so the trial court can determine whether the petitioner is entitled to relief." *Id.* (citing *Hawkins v. Tenn. Dep't of Corr.*, 127 S.W.3d 749, 757 (Tenn. Ct. App. 2002); *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001)).  "Review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently." *Jackson*, 2006 WL 1547859, at *3 (citing *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn. 1990)).  "The reviewing court is not empowered 'to inquire into the intrinsic correctness of the board's decision.'" *Gordon v. Tenn. Bd. of Prob. and Parole*, No. M2006–01273–COA–R3–CV, 2007 WL 2200277, at *2 (Tenn. Ct. App. July 30, 2007) (quoting *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003)).  Our Supreme Court has held that a common-law writ of certiorari may be used to remedy: "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the

-3-

lower tribunal's authority; and (5) plain and palpable abuses of discretion." *Gordon*, 2007 WL 2200277, at *2 (citing *Willis*, 113 S.W.3d at 712). The reviewing court does not weigh the evidence, but must uphold the lower tribunal's decision if the lower tribunal "acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently, and if there is any material evidence to support the [tribunal's] findings." *Jackson*, 2006 WL 1547859, at *3 (citing *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d 274, 276–77 (Tenn. 1980); *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983)). "A board's determination is arbitrary and void if it is unsupported by any material evidence." *Gordon*, 2007 WL 2200277, at *2 (citing *Watts*, 606 S.W.2d at 277). Whether there existed material evidence to support the board's decision is a question of law which should be determined by the reviewing court based on the evidence submitted. *Id.* (citing *Watts*, 606 S.W.2d at 277).

This Court must review a trial court's conclusions of matters of law *de novo* with no presumption of correctness. *Gordon*, 2007 WL 2200277, at *2 (citing Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). Because our review of the board's determination "is no broader or more comprehensive than that of the trial court with respect to evidence presented before the [b]oard[,]" *Id.* (citing *Watts*, 606 S.W.2d at 277), this Court "will not 'inquire into the intrinsic correctness of the [b]oard's decision,' but will uphold the decision if it was reached lawfully and in a constitutional manner." *Id.* (quoting *Hopkins v. Tenn. Bd. of Paroles and Prob.*, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001)).

*Id.* at *1-2.

## IV. Analysis

### A. Video Evidence

We begin by addressing Mr. Himes' argument that the Board's refusal of his request to review and present video evidence, in violation of TDOC policy, resulted in the denial of his due process rights. As this Court explained in *Patterson v. Tenn. Dep't of Corr.*, No. W2009-01733-COA-R3-CV, 2010 WL 1565535 (Tenn. Ct. App. Apr. 20, 2010):

The Fourteenth Amendment's Due Process Clause protects individuals by guaranteeing fair procedure. *Littles v. Campbell*, 97 S.W.3d 568, 572 (Tenn. Ct. App. 2002) (citing *Zinermon v. Burch*, 494 U.S. 113, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)). "'In procedural due process claims, the deprivation by

-4-

state action of a constitutionally protected interest in 'life, liberty, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" *Id.* (quoting *Zinermon*, 494 U.S. at 125). A claim is not actionable unless the State fails to provide due process; thus, we must first determine what process is due, if any, and whether such process has been afforded. *Id.* (citation omitted).

The United States Supreme Court has stated that only those restraints to a prisoner's liberty interest which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" are actionable under the Due Process clause. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). "Once a court determines that the restraints imposed upon the prisoner's liberty are indeed 'atypical' and a 'significant hardship,' the court must next determine what type of process is constitutionally required." *Littles*, 97 S.W.3d at 572. Pursuant to *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), the Due Process Clause requires that inmates subject to disciplinary proceedings be afforded: "(1) written notice of any charges made against the prisoner at least twenty-four (24) hours before a hearing is held; (2) the opportunity to present witnesses; (3) an impartial tribunal; and (4) a written statement from the tribunal indicating what evidence the factfinder relied upon and the reasons for the disciplinary actions taken." *Id.* (citing *Nevills v. S. Cent. Corr. Disciplinary Bd.*, No. M2000–02324–COA–R3–CV, 2001 WL 1117066, at *13 (Tenn. Ct. App. Sept. 25, 2001)).

"[E]ven if a state prisoner is not entitled to due process protections in a disciplinary proceeding, the inmate may nevertheless assert a claim under a common-law writ of certiorari that the prison disciplinary board otherwise acted illegally or arbitrarily in failing to follow TDOC's Uniform Disciplinary Procedures. *Irwin v. Tenn. Dep't of Corr.*, 244 S.W.3d 832, 835 (Tenn. Ct. App. Aug.13, 2007) (citing *Willis*, 113 S.W.3d at 713). "The inmate may be entitled to relief under a common-law writ of certiorari if he demonstrates that the disciplinary board failed to adhere to the Uniform Disciplinary procedures and that its failure to do so resulted in substantial prejudice to the inmate." *Id.* (citing *Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 378 (Tenn. Ct. App. 2003); *Willis*, 113 S.W.3d at 713–14).

*Id.* at *2.

As noted above, Mr. Himes received the following punishment: twenty days punitive

segregation, a $5.00 fine, administrative segregation placement, and the loss of one hundred and eighty (180) days of sentence reduction credits. "[T]he loss of previously earned sentence reduction credits has been found to implicate an interest sufficient to invoke due process." *Seals v. Bowlen*, No. M1999-00997-COA-R3-CV, 2001 WL 840271, at *6 (Tenn. Ct. App. July 26, 2001) (citing *Greene v. Tenn. Dep't of Corr.*, No. 01A01-9608-CH-00370, 1998 WL 382204, at *3 (Tenn. Ct. App. July 10, 1998) (footnote omitted)). Mr. Himes' other forms of punishment, however, do not constitute an "atypical" and "significant hardship." *See Seals*, 2001 WL 840271, at *6 ($5.00 fine and ten day punitive segregation not atypical); *Littles*, 97 S.W.3d at 573 (administrative segregation for an undetermined period of time not atypical). Since Mr. Himes' liberty interests have been implicated in this case, we must determine whether he was afforded the due process requirements set forth in *Wolff*.

It is clear from the record that the Board gave Mr. Himes sufficient written notice of the charges made against him well before the hearing took place. Also, we find no evidence in the record to show any partiality on behalf of the Board. Moreover, as established by the "Disciplinary Report Hearing Summary," the Board provided Mr. Himes with a detailed written statement describing the evidence that it relied upon, and the reasons for its findings and the punishment imposed.[3] Therefore, the only due process requirement at issue involves whether Mr. Himes was provided the opportunity to present witnesses.

According to Mr. Himes, the TDOC's theory was that he met with the two inmates, his fellow gang members, in the "chow hall" and ordered them to assault another inmate. Mr. Himes argues that the surveillance video recordings from the "chow hall" on that day would establish that this meeting never occurred, and thus, he could not have been guilty of participating in security threat group activity. Mr. Himes asserts that the Board's refusal to allow him to present this video evidence as his "witness" at the hearing, in violation of TDOC's Uniform Disciplinary Procedures, deprived him of his due process rights.

The Uniform Disciplinary Procedures govern disciplinary actions in the state correctional system. These procedures are intended "'[t]o provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates.'" *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 713 (Tenn.2003) (quoting TDOC Policy No. 502.01(II)). These procedures are "not intended to create any additional rights for inmates beyond those which are constitutionally required." TDOC Policy No. 502.01(V). The Uniform Disciplinary Procedures afford prisoners facing disciplinary charges with a limited

_____

[3]The "Disciplinary Report Hearing Summary" provides that the Board relied upon photo evidence of the injuries sustained by the inmates involved in the assault, statements provided by a confidential informant, and information provided in the initial disciplinary report.

right to present exculpatory evidence. Tenn. Dep't Corr. Policy No. 502.01(VI)(L)(4)(c)(6) provides that an inmate who pleads not guilty to a disciplinary offense shall have "[t]he right to present the testimony of relevant witness(es), unless allowing the witness to appear would pose a threat to institutional safety or order." "This policy reflects the United States Supreme Court's conclusion that prisoners charged with disciplinary offenses 'should be allowed to call witnesses and present documentary evidence in [their] defense when permitting [them] to do so will not be unduly hazardous to institutional safety or correctional goals.'" *Jeffries v. Tenn. Dep't of Corr.*, 108 S.W.3d 862, 874 (Tenn. Ct. App. 2002) (quoting *Wolff v. McDonnell*, 418 U.S. at 566).

Although Mr. Himes did have the limited right to present the testimony of relevant witnesses at the hearing, he failed to comply with TDOC Policy. TDOC Policy 502.01(VI)(L)(4)(d) provides that an inmate who "wishes to have witness(es) (inmate or staff) present to testify on his/her behalf at the hearing shall complete an Inmate Witness Request, CR–3511[.]" (emphasis added). The record demonstrates that Mr. Himes failed to submit a form requesting the presence of any witness prior to the hearing. In fact, the "Disciplinary Report Hearing Summary" clearly demonstrates that Mr. Himes signed and executed a waiver of his right to call witnesses on his behalf. Moreover, absent Mr. Himes' bare allegations, there is nothing in the record to show that he ever requested to review and present the video evidence. There is also nothing in the record to show that the Board denied his alleged requests to review and present the video evidence as his "witness" at the hearing. Accordingly, after thoroughly reviewing the record, we cannot say that the Board acted illegally or arbitrarily, and we further find no violation of Mr. Himes' due process rights.[4]

## B. Whether the Trial Court Erred in Dismissing the Petition for Failure to State a Claim

Next, we address Mr. Himes' argument that the trial court erred in dismissing his petition for failure to state a claim for relief. Mr. Himes argues that, because the trial court

---

[4]Assuming that this evidence existed, our "[c]ourts have repeatedly referred to the prisoner's right to present exculpatory evidence as a 'qualified' or 'limited' right. *Adams v. Tenn. Dep't of Corr.*, No. M2008-02475-COA-R3-CV, 2009 WL 4931367, at *4 (Tenn. Ct. App. Dec. 21, 2009), *perm. app. denied* (Tenn. June 18, 2010) (citing *Willis*, 113 S.W.3d at 713 ("qualified right"); *Irwin v. Tenn. Dep't of Corr.*, 244 S.W.3d 832, 836 (Tenn. Ct. App. 2007) (same); *Ivy v. Tenn. Dep't of Corr.*, No. M2001-01219-COA-R3-CV, 2003 WL 22383613, at *4 (Tenn. Ct. App. Oct.20, 2003) ("limited right"); *Jeffries*, 108 S.W.3d at 874 (same). Even if Mr. Himes' allegations were true, we would still conclude, as we did in *Adams*, that there is no basis to find that the Board acted illegally or arbitrarily by allegedly denying Mr. Himes' request to view and present prison surveillance videos. *Adams*, 2009 WL 4931367, at *5 (disciplinary board did not act illegally or arbitrarily by denying inmate's request to present allegedly exculpatory videos during his disciplinary hearing).

previously agreed to issue the writ of certiorari, it erred by subsequently dismissing his petition for failure to state a claim for relief without having first reviewed the record. We respectfully disagree.

After thoroughly reviewing the record, it is clear that Mr. Himes' argument is based on a misunderstanding of the procedure involved when a trial court issues a writ of certiorari. As noted above, "[t]he issuance of a writ [of common-law certiorari] is not an adjudication of anything." *Keen v. Tenn. Dep't of Corr.*, No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008) (citing *Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003)). Rather, it is "simply an order to the lower tribunal to file the complete record of its proceedings so the trial court can determine whether the petitioner is entitled to relief." *Id.* (citing *Hawkins v. Tenn. Dep't of Corr.*, 127 S.W.3d 749, 757 (Tenn. Ct. App. 2002); *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001)). Once the trial court issued the writ of certiorari, and TDOC filed a certified copy of the record of the proceedings below, the trial court's next step was to determine whether Mr. Himes was entitled to relief. In its final order dismissing the petition, the trial court concluded, after reviewing the record, that Mr. Himes failed to state a claim for relief. Further, the trial court determined that "[Mr. Himes'] allegations are not supported by the certified disciplinary record and this Court does not find that the [Board] acted in a fraudulent, illegal or arbitrary manner, or outside the scope of its jurisdiction." While Mr. Himes may disagree with the outcome of this matter, the trial court properly considered his petition. Accordingly, we find that this issue is without merit.

### C. Motion for New Trial or Leave to Amend

Finally, we must address Mr. Himes' argument that the trial court erred in denying his Motion for a New Trial or Leave to Amend, in light of his *pro se* filing status. While we afford pro se litigants a significant amount of leeway, we must not excuse them from adhering to the same procedural rules and substantive law applicable to all parties. *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). Because this matter did not involve a jury trial, we find that a motion for a new trial was not applicable in this case. *See* Tenn. R. Civ. P. 59.07 ("A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been *a trial by jury* for any of the reasons for which new trials have heretofore been granted.) (emphasis added). Moreover, the decision to grant or deny a motion to amend a pleading is within the sound discretion of the trial court, and this Court will not reverse such a decision absent an abuse of discretion. *Conley v. Life Care Centers of Am., Inc.*, 236 S.W.3d 713, 723 (Tenn. Ct. App. 2007) (citing *Fann v. City of Fairview*, 905 S.W.2d 167, 175 (Tenn. Ct. App. 1994)). After the trial court entered its final judgment, Mr. Himes asked the trial court to grant him leave to amend his petition "to fix the areas the

court found to be flawed." After reviewing Mr. Himes' brief, however, he fails to provide what he sought to amend about his original petition, and it appears that his argument on this issue is based on his misunderstanding of the trial court's ruling. Mr. Himes' brief repeatedly states that the trial court should not have dismissed his petition for failure to state a claim. The trial court, however, did not dismiss Mr. Himes' petition pursuant to a motion to dismiss for failure to state a claim under Rule 12.02(6) of the Tennessee Rules of Civil Procedure. Instead, the trial court dismissed the petition after it reviewed the record and determined that Mr. Himes' allegations failed to state a claim for relief. Therefore, after thoroughly reviewing the record, we find no error in the trial court's decision to deny Mr. Himes' leave to amend his petition for writ of certiorari.

## V. Conclusion

For the forgoing reasons, we affirm the decision of the trial court. Costs of this appeal are taxed to Appellant, Walter Himes, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE