IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2024

**JOHN LINDBERG v. TCIX DISCIPLINARY BOARD, ET AL.**

**Appeal from the Chancery Court for Hickman County**
**No. 20-CV-7048          Michael E. Spitzer, Judge**
_____

**No. M2024-00326-COA-R3-CV**
_____

John Lindberg ("Lindberg"), an inmate at Turney Center Industrial Complex ("TCIX"), was convicted of introducing drugs into TCIX by the prison's Disciplinary Board ("the Board"). After failed appeals to the TCIX Warden and Tennessee Department of Correction ("TDOC") Commissioner, Lindberg filed a petition for a writ of certiorari in the Chancery Court for Hickman County ("the Trial Court"). The Trial Court denied his petition. He appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which W. NEAL MCBRAYER and CARMA DENNIS MCGEE, JJ., joined.

John Lindberg, Only, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter, and Benjamin Owen, Assistant Attorney General, for the appellee, Turney Center Disciplinary Board.

**OPINION**

**Background**

This case began when a TDOC probationer was caught introducing drugs into TCIX on August 10, 2020. According to the TDOC Disciplinary Report, it was determined that Lindberg was "directly linked to the introduction." He was charged with violating Tenn. Code Ann. § 39-16-201(b)(1), which makes it unlawful for any person to "[k]nowingly and with unlawful intent take, send, or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision . . . (B) Any

intoxicant, legend drug, controlled substance, or controlled substance analogue found in chapter 17, part 4 of this title."

The disciplinary hearing was held on September 2, 2020. Neither Lindberg nor his staff advisor had any questions for the reporting official. According to the Disciplinary Report Hearing Summary, the Board relied upon the "written report" of the reporting official as evidence to find Lindberg guilty of the infraction. As a result of his conviction, Lindberg was put on a twelve-month package restriction, sentenced to ten days "punitive segregation," and fined five dollars. Lindberg appealed to the TCIX Warden and then to the Commissioner of TDOC, both of whom denied his appeal.

Lindberg filed a petition for a writ of certiorari seeking the Trial Court's review of the Board's decision and alleging that the Board violated several of its Uniform Disciplinary Procedures ("UDP"). He named the Board and Sergeant Joseph Gilbert as respondents. He alleged the following violations: he was housed in segregation for more than seven days pending investigation, the reporting official was not present at the disciplinary hearing, confidential information relied upon by the Board was not independently verified with a "TDOC Contemporaneous Record of Confidential Informant Reliability, CR-3510" form, and the Board convicted him without material evidence.

The Board filed the administrative record in the Trial Court, and Sergeant Michael P. Yablonski, the current acting and presiding Board Chairman, certified that the record was the "complete and whole documentation" of the incident, including the "signed Disciplinary Report, signed Disciplinary Report Hearing Summary, signed Disciplinary Report Appeal to Warden and signed Disciplinary Report Appeal to Commissioner."

In his brief filed in the Trial Court, Lindberg noted Yablonski's affidavit as evidence that the Board had violated UDP 502.01(VI)(L)(4)(e)-(g) by failing to complete a CR-3510 document, demonstrating the factual basis for the Chairman's finding that the confidential informant was reliable. Based on the absence of the CR-3510 form, Lindberg argued that the Board erred by relying on a confidential informant, thereby violating UDP 502.01(VI)(L)(4)(f), which provides: "Where the reliability of the confidential informant and/or the evidence of security sensitive nature has not been independently verified, such testimony or evidence shall not be considered by the disciplinary board/hearing officer in the disposition of the disciplinary charge(s)." According to Lindberg, the Board found him guilty without material evidence given that it should not have considered the "proffered confidential information."

He further argued that the Board violated UDP 502.01(VI)(L)(4)(c)(4), which provides an inmate pleading "not guilty" the right to "have the reporting official to the alleged infraction present and testifying at the hearing." Lindberg alleged that the reporting official was not present at the disciplinary hearing.

He also alleged that the Board violated UDP 502.01(VI)(G)(6) and (7), which provide, respectively:

> No inmate should be held for more than seven calendar days pending investigation. Any delay shall be reviewed/approved/denied by the Warden/Superintendent/designee (CM at privately managed facilities). The inmate shall be notified of any delay in the investigation and the expected completion date of the investigation.

> Immediately upon conclusion of the investigation, the inmate should be charged with an infraction or released from segregation. Procedures specified for notifying the inmate of the charges should be followed. The time limit within which the disciplinary hearing shall convene (as provided in Section VI.(A)(6) above) should be measured from the time the investigation is completed and the inmate is charged with the infraction.

According to Lindberg, the investigation into the probationer's actions was completed on August 10, 2020, and he was placed in segregation pending investigation on August 14, 2020. Eleven days after being placed in segregation, Lindberg was served with the Disciplinary Report on August 25, 2020. He alleged that he remained in segregation up to the date of the disciplinary hearing.

Lindberg contended that these violations substantially prejudiced him. He asked the Trial Court to reverse the Board's decision and remand with instructions for the Board to dismiss the Disciplinary Report.

The Board filed a corrected administrative record, which included the CR-3510 form that Lindberg complained the Board did not utilize. A second affidavit by Yablonski was filed, in which Yablonski swore:

> The prior certified record did not contain the CR-3510 form due to its confidential nature. However, the prior certified record did reference information obtained via a confidential informant that was presented during the disciplinary hearing for Incident/Disciplinary #01455755 for John R. Lindberg[.]

> The attached CR-3510 is a true, fair, and accurate copy of the CR-3510 presented to the Disciplinary Board and relied upon during Incident/Disciplinary #01455755 for John R. Lindberg[.]

The Board filed a response to Lindberg's brief, arguing that the administrative record did not reveal any error which substantially prejudiced him. The Board argued

- 3 -

that it was provided the CR-3510 form, and that this form, the written report, and the reporting official's testimony provided ample material evidence to support Lindberg's conviction. The Board further argued that the reporting official was present at the hearing, as evidenced by the Disciplinary Report's statements that neither Lindberg nor his staff advisor had any questions for the official. Even if the reporting official was not present, Lindberg was unable to demonstrate any prejudice by his absence as neither Lindberg nor his staff advisor had any questions for him. With respect to Lindberg's final claim of error, the Board argued that Lindberg was placed in segregation for only two days pending the outcome of the investigation and was then placed back in segregation after being charged on August 25, 2020.

The Trial Court denied Lindberg's petition, finding:

> The administrative record was filed initially on June 16, 2022, however, that record was not complete and the record was supplemented by the State on February 16, 2023. A significant piece of evidence that was necessary for a complete determination in this case was form CR-3510 which was not filed with the original record. That form was filed under seal due to its confidential nature.
>
> * * *
>
> The allegations of the petitioner concerning errors in receiving and considering confidential information at this hearing are without merit. The reliability of the informant was and can be independently deemed reliable and was apparently independently corroborated specifically as it relates to the charges against the petitioner. Grounded in the evidence received from the confidential informant, and that without any additional proof, was sufficient to find material evidence by a preponderance of the evidence supporting the finding of the disciplinary board.
>
> In making its finding at the disciplinary proceeding this Court can find nothing in the record to indicate that the defendant did not have a fair hearing; that the Board acted illegally, fraudulently or arbitrarily and the Board followed TDOC uniform disciplinary policies in making its determination. Irrespective of the other claims of the respondent, this Court can find no basis to overturn or set aside the findings of the Disciplinary Board and therefore the writ of certiorari is hereby DENIED.

Lindberg timely appealed.

**Discussion**

We restate and consolidate the issues Lindberg presents for our review as follows: (1) whether the Trial Court abused its discretion by permitting the Board to supplement the record with the confidential informant reliability CR-3510 form, (2) whether the Board convicted him without material evidence, and (3) whether the Board failed to provide him with a fair hearing.

This Court has previously explained the relevant standard of review as follows:

"The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals." *Jackson v. Tenn. Dep't of Corr.*, No. W2005-02240-COA-R3-CV, 2006 WL 1547859, at *3 (Tenn. Ct. App. June 8, 2006) (citing *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1988)). The issuance of a writ of common-law certiorari is not an adjudication of anything. *Keen v. Tenn. Dep't of Corr.*, No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008) (citing *Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003)). Instead, it is "simply an order to the lower tribunal to file the complete record of its proceedings so the trial court can determine whether the petitioner is entitled to relief." *Id.* (citing *Hawkins v. Tenn. Dep't of Corr.*, 127 S.W.3d 749, 757 (Tenn. Ct. App. 2002); *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001)). "Review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently." *Jackson*, 2006 WL 1547859, at *3 (citing *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn. 1990)). "The reviewing court is not empowered 'to inquire into the intrinsic correctness of the board's decision.' " *Gordon v. Tenn. Dep't of Corr.*, No. M2006-01273-COA-R3-CV, 2007 WL 2200277, at *2 (Tenn. Ct. App. July 30, 2007) (quoting *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003)). Our Supreme Court has held that a common-law writ of certiorari may be used to remedy: "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." *Gordon*, 2007 WL 2200277, at *2 (citing *Willis*, 113 S.W.3d at 712). The reviewing court does not weigh the evidence, but must uphold the lower tribunal's decision if the lower tribunal "acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently, and if there is any material evidence to support the [tribunal's] findings." *Jackson*, 2006 WL 1547859, at *3 (citing *Watts v. Civil Serv. Bd. of*

- 5 -

*Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980); *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983)). "A board's determination is arbitrary and void if it is unsupported by any material evidence." *Gordon*, 2007 WL 2200277, at *2 (citing *Watts*, 606 S.W.2d 274, 276-77 (Tenn. 1980)). Whether there existed material evidence to support the board's decision is a question of law which should be determined by the reviewing court based on the evidence submitted. *Id.* (citing *Watts*, 606 S.W.2d at 277).

This Court must review a trial court's conclusions of matters of law *de novo* with no presumption of correctness. *Gordon*, 2007 WL 2200277, at *2 (citing Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). Because our review of the board's determination "is no broader or more comprehensive than that of the trial court with respect to evidence presented before the [b]oard[,]" *Id.* (citing *Watts*, 606 S.W.2d at 277), this Court "will not 'inquire into the intrinsic correctness of the [b]oard's decision,' but will uphold the decision if it was reached lawfully and in a constitutional manner." *Id.* (quoting *Hopkins v. Tenn. Bd. of Paroles and Prob.*, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001)).

*Ross v. Tenn. Dep't of Corr.*, No. W2008-00422-COA-R3-CV, 2008 WL 4756873, at *2-3 (Tenn. Ct. App. Oct. 30, 2008).

We review the Trial Court's decision to allow the Board to supplement the record with the CR-3510 form under the abuse of discretion standard. *Lamar Tenn., LLC v. Murfreesboro Bd. of Zoning Appeals*, 336 S.W.3d 226, 232 (Tenn. Ct. App. 2010) ("We review the trial court's decision to deny the introduction of new evidence to supplement the record under an abuse of discretion standard."). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

We first address Lindberg's argument that the Trial Court erred by allowing the Board to supplement the administrative record with the CR-3510 form. Lindberg seems to argue that the Trial Court should not have allowed this supplementation because Yablonski incorrectly stated in his affidavit that he was the "acting and presiding Disciplinary Board Chairman" at the time of Lindberg's disciplinary hearing. Lindberg argues in his appellate brief that Gilbert was the presiding Chairman at his hearing and that Yablonski did not participate at the hearing.

Based upon our review of the administrative record, it appears that Gilbert, rather than Yablonski, was the Chairman at Lindberg's hearing. We note that Gilbert and TCIX's trial court filings identify Gilbert as "Disciplinary Board Chairman" or

- 6 -

"Disciplinary Hearing Officer." The Board argued to the Trial Court that both Yablonski and Gilbert are acting and presiding Chairmen, and that while Gilbert presided over Lindberg's hearing, Yablonski acted as the custodian of records in the certification of the administrative record.

Nevertheless, it makes no significant difference whether Gilbert or Yablonski was the presiding Chairman. The CR-5310 form is signed by the presiding Chairman, who appears to have been Gilbert; the signature on the CR-3510 form appears to match the one on the Disciplinary Report Hearing Summary; both signatures appear to be Gilbert's; and the CR-3510 form is dated August 25, 2020. Implicit in Lindberg's argument is the assertion that this form is fraudulent and that TDOC created this document at some point after the disciplinary hearing. As further evidence that the form did not exist at the time of the hearing, Lindberg points to the Disciplinary Report Hearing Summary, which displays "Yes" and "No" checkboxes for whether the CR-3510 form was completed. Neither box is checked. The facts that Yablonski, rather than Gilbert, certified the administrative record, and that the Disciplinary Report Hearing Summary does not indicate one way or another whether the form was completed and received by the Board, are insufficient to demonstrate that the Board fraudulently created this document after the fact to cure its mistake. Lindberg asks this Court to draw a conclusion based on tenuous suggestions. We decline to do so.

Lindberg further argues that the administrative record was "devoid of any indicia that the Disciplinary Board Chairman fulfilled his requisite responsibility" mandated by UDP 502.01(VI)(L)(4)(e), which provides that the Chairman will "independently access and verify the reliability of the informant's testimony and/or the confidential security sensitive evidence." He also argues that he had "no way to judge or contest the validity of this document" or challenge its contents. However, UDP 502.01(VI)(L)(4)(c)(3) provides that inmates do not have the right to review confidential information. UDP 502.01(VI)(L)(4)(g) further provides that the form "shall be considered confidential and kept as a non-public access record." It, therefore, makes sense why he would not have known that the administrative record contained the CR-3510 form, and also dispenses with his argument that he was prejudiced by having no way to review or challenge it. *See Hilliard v. Turney Ctr. Disciplinary Bd.*, No. M2011-02213-COA-R3-CV, 2012 WL 5868829, at *4 (Tenn. Ct. App. Nov. 19, 2012) ("even if the Turney Center disciplinary board hearing officer/chairperson did complete a CR-3510 form, it would be confidential and properly excluded from the record in accordance with the TDOC Policy"); *Jackson v. Tenn. Dep't of Corr.*, No. W2005-02240-COA-R3-CV, 2006 WL 1547859, at *8 (Tenn. Ct. App. June 8, 2006) ("The fact that the Petitioner was not given access to confidential witness testimony, or allowed to review confidential documents may frustrate the Petitioner, however it is neither a violation of TDOC policy, nor an indication that the Board acted arbitrarily and capriciously.").

He also contends that even if the CR-3510 is genuine, the Board violated the UDP given that the Chairman signed the form on August 25, 2020, several days before the hearing on September 2, 2020. Lindberg argues that the Chairman violated UDP 502.01(VI)(A)(5)(b), which provides that no employee shall be permitted to sit on the panel of the board hearing if he has participated directly in the investigation. However, Lindberg fails to demonstrate how he was substantially prejudiced by the Chairman's pre-hearing assessment of the reliability of the confidential information. *Kilburn v. Tenn. Dep't of Corr.*, No. M2010-01362-COA-R3-CV, 2011 WL 532212, at *3 (Tenn. Ct. App. Feb. 14, 2011) ("Although the UDP do not give inmates due process guarantees greater than those that are constitutionally required, deviations from the UDP may warrant judicial relief if the inmate can show 'substantial prejudice as a result and that the error would have affected the disposition of the case.'") (citing UDP 502.01(v)).

Lindberg has not pointed to sufficient evidence to demonstrate that the Board did not receive the CR-3510 or that it was not part of the administrative record, and we, therefore, discern no abuse of discretion in the Trial Court's allowance of the supplemental administrative record. *See Hilliard*, 2012 WL 5868829, at *4 (declining to consider the inmate's argument that the CR-3510 form was not completed because the record was silent as to that issue).

Lindberg next contends that the Board convicted him without material evidence, largely arguing, again, that there was no CR-3510 form and that the written report did not provide sufficient detail. We note that the Disciplinary Report Hearing Summary lists "reporting official/written statement" as "Witness(es) Against Offender." Under "DISPOSITION AND A STATEMENT OF REASONS WHICH SUPPORTS THAT DECISION," the Board includes "Confidential Information." It is clear from the Disciplinary Report Hearing Summary that the Board relied upon the reporting official's written report, which we interpret as being the "Disciplinary Report," and the confidential information that served as the basis for that report.

The Disciplinary Report states that on August 10, 2020, a TDOC probationer was caught introducing drugs into the TCIX annex in Clifton. The report goes on to state that it was determined that Lindberg was "directly linked to the introduction" after subsequent investigation. The report then stated that Lindberg was charged with a violation of Tenn. Code Ann. § 39-16-201 and that the confidential information would be provided to the Board. The CR-3510 form provided that the probationer who attempted to introduce the drugs into TCIX identified Lindberg as the inmate responsible for the drug introduction.

In concluding that the report and CR-3510 form established material evidence for Lindberg's conviction, we emphasize that "guilt of a disciplinary infraction does not have to be proven beyond a reasonable doubt, but only by a preponderance of the evidence" and that "the disciplinary board is entitled to consider any evidence it finds reliable, whether or not such evidence would be admissible in a court of law." *Keen v. Tenn.*

*Dep't of Corr.*, No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *5 (Tenn. Ct. App. Feb. 25, 2008). Although the Board by no means wrote an ideal Disciplinary Report Hearing Summary, the report and the CR-3510 form, restating the confidential informant's identification of Lindberg as the inmate responsible for the introduction of drugs into TCIX, constitute material evidence of his guilt. *Snow v. Turney Ctr. Disciplinary Bd.*, No. M2016-01148-COA-R3-CV, 2016 WL 7409846, at *8 (Tenn. Ct. App. Dec. 22, 2016) ("Although the board did not provide a lengthy explanation for its decision, we find it met the minimum requirements of stating detailed reasons for its decision and summarizing the evidence it relied upon" where the evidence consisted of two knives and the Disciplinary Report.). We, therefore, affirm the Board and the Trial Court on this point as well.

Next, Lindberg appears to argue he was deprived of a fair hearing because he alleges that the reporting official was not present at the hearing. He cites to UDP 502.01(VI)(L)(4)(c)(4), which provides that inmates pleading not guilty shall be permitted to "have the reporting official to the alleged infraction present and testifying at the hearing." We note that the Board argued before the Trial Court that the reporting official was present at the hearing, although it does not clearly present this as fact on appeal. Nevertheless, the Disciplinary Report Hearing Summary clearly states that the reporting official was a witness against Lindberg and that neither Lindberg nor his staff advisor asked him any questions. Lindberg does not dispute this latter point.

Even if the reporting official was not present at the hearing, Lindberg still fails to demonstrate how he was substantially prejudiced by his possible absence. *Kilburn*, 2011 WL 532212, at *3 ("Although the UDP do not give inmates due process guarantees greater than those that are constitutionally required, deviations from the UDP may warrant judicial relief if the inmate can show 'substantial prejudice as a result and that the error would have affected the disposition of the case.'") (citing UDP 502.01(v)). According to the Disciplinary Report Hearing Summary, Lindberg and his staff advisor both stated: "I have no questions for the reporting official." It further states: "Reporting official was not called by I/M and I/M advisor having no questions." Moreover, the Disciplinary Report Hearing Summary does not reflect that Lindberg or his staff advisor lodged any objection based on the reporting official's absence. Notwithstanding the fact that their statements imply the reporting official's presence, Lindberg's and his staff advisor's affirmation that they had no questions for the reporting official belie any assertion of substantial prejudice. Lindberg has not shown how the reporting official's presence would have altered the outcome of the disposition of the hearing, particularly given that neither he nor his staff advisor had any questions to ask him. We, accordingly, discern no substantial prejudice by the reporting official's possible absence.

Lastly, Lindberg argues that TDOC violated UDP 502.01(VI)(G)(6) and (7), which provide, respectively, that no inmate "should be held for more than seven calendar days pending investigation," and upon the conclusion of the investigation, the inmate

should either be charged with an infraction or released from segregation immediately. Lindberg alleges that he was placed in segregation on August 14, 2020, and held there up to the date of the hearing. As evidence, he cites to his cell bed assignment list, which is incomprehensible to this Court. The list consists of abbreviations for the units, numbers for the cells, and letters for the beds. Without evidence of what these abbreviations, numbers, and letters signify, there is no way for this Court to know how long he was held in segregation based on this document.

The Board argues that Lindberg was held in segregation for only two days pending the investigation, pointing to the Disciplinary Report, which explicitly states the start and end date of Lindberg's segregation as August 14 to 15, 2020. We glean no evidence from the record that Lindberg was held in segregation for as long as he alleges. Moreover, besides the blanket assertion that being segregated prevented him from developing a defense, he provides no evidence that would lead this Court to conclude that he was substantially prejudiced by his hold in segregation.

We, accordingly, conclude that the Board "acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently," and that its findings were supported by "material evidence." *Jackson*, 2006 WL 1547859, at *3. Although the Board may not have conducted itself in perfect accordance with the UDP, we discern no reversible error. We affirm the Trial Court.

## Conclusion

For the foregoing reasons, we affirm the Trial Court's denial of appellant John Lindberg's petition. We remand to the Trial Court for collection of costs below. Costs of the appeal are assessed against the appellant, John Lindberg.

_____
D. MICHAEL SWINEY, CHIEF JUDGE